

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable R. A. Barton
County Attorney
Calhoun County
Port Lavaca, Texas

Dear Sir:

Opinion No. O-4117
Re: Constitutionality of H. B. 7,
47th Legislature, Regular
Session.

We acknowledge receipt of your request for an opinion of this Department on the constitutionality of House Bill 7 of the 47th Legislature, Regular Session.

Your request contains two questions which we have worded as follows:

1. Is House Bill 7 unconstitutional?

2. Does the inclusion of word "harbors" in House Bill 7 render said bill unconstitutional because Article 11, Section 8 of the Constitution of Texas only requires donations to construct "seawall or breakwaters"?

We shall not attempt to quote the whole of House Bill 7, supra, but for the purposes of clarity of this opinion, we quote the caption as follows:

"An Act making a donation of all of the net amount of State ad valorem taxes collected on property situated in and from rolling stock of railroads apportioned to Calhoun County, Texas, to the City of Port Lavaca, Texas, to enable the City to construct, repair, and

Hon. R. A. Barton, page 2

improve seawalls, breakwaters, and harbors, to pre-
vent continuing and recurring calamitous overflows;
providing for reports by the assessor and collector
of taxes to Comptroller and providing for disposition
of moneys collected by him; authorizing said city to
issue bonds subject to the provisions and limitations
contained in this act; prescribing a penalty for di-
version of such state donated funds; enacting other
provisions relating to the subject, and declaring an
emergency." (Emphasis ours)

Article 11, Section 8 of the Constitution of Texas
reads as follows:

"The counties and cities on the Gulf Coast being
subject to calamitous overflows, and a very large
proportion of the general revenue being derived from
those otherwise prosperous localities. The Legislature
is especially authorized to aid by donation of such
portion of the public domain as may be deemed proper,
and in such mode as may be provided by law, the con-
struction of seawalls, or breakwaters, such aid to be
proportioned to the extent and value of the works
constructed or to be constructed, in any locality."

We will discuss the questions in their reverse order.

House Bill 7, supra, provides that the taxes are to be
remitted for the purposes of constructing, repairing, and im-
proving "seawalls, breakwaters and harbors." Article 11,
Section 8 of the Constitution of Texas only authorizes re-
mission to construct "seawalls or breakwaters." In construing
the meaning of the words "seawalls" or "breakwaters" as used
in the Constitution, we must give them their ordinary signifi-
cance for there is nothing in the context to indicate that the
framers of the Constitution meant thattthey should be used
otherwise. Ex parte Rodriquez, 39 Tex. 705.

Webster's International Dictionary defines the term
"breakwaters" as being:

"A structure for breaking the force of waves,
or to protect a harbor or beach."

Hon. R. A. Barton, page 3

The same authority defines "seawall" as being:

"A wall, or embankment, to resist encroach-
ment of the sea."

The term "harbor" is defined by the same authority
as being:

"A portion of a sea, a lake, or other body of
water, either landlocked or artificially protected
so as to be a place of safety for vessels in stormy
weather."

In the case of the Cuzco, 225 Fed. 176, the court de-
fined harbors as places of refuge in which protection and
shelter are sought within the enclosures and protection of land.

We are of the opinion that by no stretch of the imagina-
tion could the term "harbor" be included within the meaning of
the words "seawall" and "breakwaters" as above defined.

We are, therefore, of the opinion that House Bill 7,
supra, is more comprehensive than is authorized under Article
11, Section 5 of the Constitution of Texas.

However, this does not necessarily mean that the whole
of said bill must fall.

In the case of Zwernemann vs. Von Rosenberg, 13 S. W.
485, 488, the Supreme Court of Texas announced the following
rule:

"The Rule for the construction of statutes in
partial conflict with the Constitution is that if the
portion repugnant to the fundamental law can be stricken
out, and that which remains is complete in itself, and
'capable of being executed in accordance with the
apparent legislative intent. . . it must be sustained.'
Ex parte Towles, 48 Tex. 421, quoting Cooley, Const.
Lim. 178. If the unconstitutional provision be but
incidental to the main purpose, and be not essential
to give effect to the statute, such part may be re-
jected, leaving the remainder to stand. The provisions
we have quoted clearly show, we think, that it was the
legislative intent to utterly exempt the homestead from

Hon. R. A. Barton, page 4

the claims of the general creditors of the estate,
provided a constituent of the family survived the
decendent, and, in case the estate was insolvent, to
remove it beyond the pale of administration. This is
in accordance with all previous legislation, and is not
repugnant to the constitution. So much of the statute
as attempts to make the homestead of an insolvent to
descend in a manner different from other real property
is prohibited by the Constitution, and is void. But
the other provisions of the statute are not dependent
upon this. They can have effect without it, and
should therefore stand."

As above stated we must ascertain whether or not the
repugnant portion can be stricken out and leave a complete
enactment which is capable of being executed in accordance with
the legislative intent. In ascertaining the legislative intent,
it is our duty to look at the whole bill. In the case of
Texarkana & Ft. Smith Ry. Co., et al vs. Houston Gas & Fuel
Co., 51 S. W. (2d) 284, the court stated:

"In construing statutes enacted by the legisla-
ture, it is the duty of the court to look to the
entire act, including the caption, the body of the
act, and even the emergency clause, to determine the
legislative intent. When the legislative intent is
once determined, it is the law."

An examination of the entire bill reveals that the pur-
pose of the bill is to prevent calamitous overflows, and it
sets up the machinery with which to accomplish that purpose.
In fact the emergency clause expressly states that:

"This Act is designed to protect a locality
situated on the Gulf Coast from calamitous overflows.
. ."

It is readily apparent that the intention of the Legis-
lature to provide the means with which to prevent such over-
flows will not be hampered by the striking out of the word
"harbor," and that a complete enactment which will accomplish
the legislative intent and purpose will remain.

Enactments of the Legislature which are substantially
the same as House Bill 7, supra, after the word "harbors" has
been stricken out, have been before our courts a number of

Hon. R. A. Earton, page 5

times. We consider the case of City of Aransas Pass vs. Keeling, 247 S. W. 818, controlling in this matter, and in that case the Supreme Court of Texas upheld the constitutionality of the bill authorizing the remission of taxes to the City of Aransas Pass. We do not think a detailed discussion of House Bill 7 is, therefore, necessary.

We are, therefore, of the opinion that House Bill 7, supra, wherein it seeks to remit taxes to construct seawalls or breakwaters is not violative of the Constitution of Texas, but that it is unconstitutional insofar as it seeks to remit taxes to construct harbors. We further hold that the striking of the word "harbors" from the bill does not invalidate the balance thereof.

Trusting that the foregoing fully answers your inquiry, we are

APPROVED OCT 28, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
Richard H. Cooke
Assistant

RHC:N

